DRESSER, The E. K. See Case No. 4,324.

DREW (BETTS v.). See Case No. 1,372.

DREW (ELMINGER v.). See Case No. 4,416.

---

## Case No. 4,078.

DREW v. HULL OF A NEW SHIP.

[17 Leg. Int. 405.] [1]

District Court, D. Massachusetts. 1860.

MARITIME LIENS—MATERIALS FURNISHED—PAYMENT BY NOTE—RECEIPT.

[1. Lumber sold to a shipbuilder, who has several vessels on the stocks, but not for use in any particular one of them, gives rise to no lien, against one in which part of it is used. Rogers v. Currier, 13 Gray, 129, followed.]

[2. Where a bill is receipted "Received payment by note," the giving of the note must be treated as a payment thereof, in the absence of any evidence to qualify the receipt.]

[This is a libel by E. C. Drew against the hull of a new ship (George W. Jackman and others, assignees, claimants).]

SPRAGUE, District Judge. This is a libel wherein the libellant seeks to recover against the ship for the value of a cargo of hard

[1] [Reprinted by permission.]

pine lumber, consisting of 143,000 feet, which he avers he furnished Currier & Townsend, at Newburyport, in April, 1856, to be used in this ship. It appeared that Feb. 6, 1856, Currier & Townsend were ship builders, doing a large business at Newburyport, and had then two large ships on the stocks, and that in February they contracted with Williams and Daland to build another of a thousand tons for them. The written contract for this last was produced and was dated in April following. On the 6th of February, C. & T. gave the libellant an order for this cargo of lumber, specifying its dimensions. The lumber was to come from Georgetown, South Carolina, and had been there sold to the libellant by Resley & Co. The price to be paid for the lumber was $15 per thousand at Georgetown, and C. & T. were to pay the freight at $10 per thousand. The libellant had previously chartered the bark Richmond for a voyage from Boston to Georgetown, with a cargo of ice, and back with naval stores or lumber to Boston or Newburyport. C. & T. applied to him, and obtained this bark to bring the lumber at $10 per thousand. The lumber was laden on board at Georgetown, and C. & T. insured it to Newburyport. The bill of lading was in libellant's name. The bark arrived April 25th, and C. & T. at different times paid the master $600 on account of freight. The lumber was all delivered to them. When they gave the order nothing was said of its being for any particular vessel, nor was there anything in the bill of lading, invoice, or bought and sold note, to indicate this. C. & T. were to have ninety days' credit for the lumber from the date of the bill of lading. Before the lumber arrived the libellant sent C. & T. a bill of it, amounting to about $2,200, and received their note on 90 days therefor, and receipted the bill, "Received payment by note." Shortly after C. & T. failed and took the benefit of the insolvent laws, and the claimants became their assignees. Before their failure they had used some 18,000 feet of this lumber in the ship libelled, and the assignees, after their appointment, used some 45,000 feet more. A portion of the balance was used in another ship, and the rest sold by the assignees. The libellant had paid the freight under his charter party, and now claimed a lien for 63,000 feet of this lumber, at $25 per thousand.

The claimants objected that there was no lien: 1. Because the lumber was not furnished for any specific ship, and because this case came within the decision of Rogers v. Currier, 13 Gray, 129. 2. Because the contract and sale were not in Massachusetts, but in South Carolina, and hence the case came within the decision of Tyler v. Currier, Id. 134. 3. Because the note received, under the receipt in the bill, that it was paid by note, was, in the absence of all controlling evidence, a payment.

[THE COURT held that] under the facts

shown, the case came clearly within that of Rogers v. Currier [supra], and that the lumber, not being shown by the libellants to have been furnished for a particular ship, there was no lien. As this disposed of the case, he did not consider the remaining questions further than to say, that in his judgment it would be difficult for the libellant to maintain his case against the third objection, without reference to the law as held in this state, as to notes being payment. it seemed clear that when the party declared, as in this case. he did receive such note in payment. and did not attempt to qualify this declaration by any evidence, the note was to be treated as payment. Such would be the law under the decisions in England and the courts of this country, irrespective of the peculiarity of the rule in Massachusetts which THE COURT was not disposed to extend. Libel dismissed with costs.